IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEPHON R. SAUNDERS,

      Plaintiff,

  v.                                               Civil Action 2:18-cv-451
                                                   Judge George C. Smith
                                                   Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Stephon R. Saunders, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I. BACKGROUND**

    **A. Prior Proceedings**

Plaintiff applied for DIB on June 3, 2010, alleging disability beginning June 15, 2008 due to numerous physical and mental impairments. (Doc. 6-5, Tr. 243–45). An Administrative Law Judge (the "ALJ") held a hearing on March 13, 2012 (Doc. 6-2, Tr. 74–82) after Plaintiff's application was denied initially and upon reconsideration. The hearing was continued, and a subsequent hearing was held on August 2, 2012. (*Id*., Tr. 68–73). A third hearing was held on December 18, 2012 (*Id*., Tr. 40–67). The ALJ then denied benefits in a written decision on January 18, 2013. (*Id*., Tr. 16–38). That became the final decision of the Commissioner when the Appeals Council denied review. (Doc. 6-2, Tr.1–6).

On May 23, 2014, Plaintiff filed a case in this Court seeking a review of the final decision of the Commissioner. The District Court remanded the case to the Commissioner. (Doc. 6-11, Tr. 1419–38). The Appeals Council vacated the Commissioner's decision, and a hearing was held on November 15, 2016. (Doc. 6-10, Tr. 1363–77). On December 5, 2016, the ALJ denied benefits in a written decision. (*Id.*, Tr. 1325–56). That decision became final when the Appeals Council denied review on March 9, 2018. (*Id.*, Tr. 1303–08). Plaintiff filed this action on May 8, 2018 (Doc. 1), and the Commissioner filed the administrative record on August 9, 2018 (Doc. 6). Plaintiff filed a Statement of Specific Errors (Doc. 10), the Commissioner responded (Doc. 12), and Plaintiff filed a Reply (Doc. 13).

**B. Relevant Testimony at the Administrative Hearings**

The ALJ usefully summarized Plaintiff's testimony as follows:

> At his initial hearing, the claimant testified that he uses supplemental oxygen when he has to walk long distances. He is unable to work because of his breathing and heart problems. It is hard for him to stand and be active. He also has arthritis in his right hand, which bothers him when it gets cold, or when cold water hits his hand, which then gets numb. He can walk one block, stand [1/2] hour at a time, rest [1/2] hour, and then stand again for [1/2] hour. During an eight-hour day, he would be able to stand three to four hours. He can also lift at most a gallon of milk but no heavy objects. The claimant also stated that he is depressed and anxious and has been hospitalized for his nerves, maybe 1997 to 1998. He has a poor memory and occasionally loses track of what he is watching. He has also had a hard time getting along with others when he was working.
>
> During his most recent November 2016 hearing, the claimant testified his largest issues were and remain his heart, breathing, and walking. He reported that after moving for more than 3 to 4 blocks he has to use his nitro medication for his residual chest pain. The claimant reported continued sleep problems, which he indicated involve receiving okay sleep to only 3-4 hours of sleep per night. The claimant endorsed right hand arthritis, which results in occasional hand problems, but he admitted he has no trouble holding a cup or using a fork. He endorsed continued memory problems, but indicated he remains able to watch television if he finds shows that interest him and he concentrates less on programing that does not interest him. Since the time of his prior hearing in 2012, he reported a

2

worsening of his overall health and conditions. He indicated since that time he was
diagnosed with diabetes and requires insulin and medication management.

It should be noted the claimant's representative indicated that he questioned the
claimant regarding his current functioning and the deterioration of his combination
of conditions and general health in the event that the claimant would have been
found disabled prior to his date last insured to show ongoing and continuing
disability. However, it was understood on the record the claimant has a remote
date last insured of December 31, 2011 and it is known by all parties disability
must be established before the expiration of that date, regardless of the claimant's
current functioning, impairments, or symptoms.

(Tr. 1333–34).

### C. Relevant Medical Background

The relevant medical records are described below.

### D. The ALJ's Decision

Relevant here, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. (Tr. 1328). Then, after reviewing the medical evidence as a whole, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease, obesity, chronic obstructive pulmonary disease, sleep apnea, and a mood disorder. (Tr. 1328). The ALJ concluded, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (Tr. 1330).

As for Plaintiff's RFC, the ALJ opined:

[T]hrough the date last insured, the claimant has the residual functional capacity to
perform light work . . . except the claimant could lift and carry up to 20 pounds
occasionally and 10 pounds frequently. He could sit, stand, and walk for 6 hours
each during an 8-hour workday. The claimant would be precluded from climbing
ladders, ropes, and scaffolds. He should avoid exposure to moving machinery or
unprotected heights. He could have frequent exposure to dust, fumes, gases,
extreme cold, extreme heat, and humidity. The claimant could understand,
remember, and carry out simple, repetitive tasks; and respond appropriately to
coworkers and supervisors in a task-oriented setting, with only occasional public
contact and only occasional interact with coworkers. Further, the claimant could

3

adapt to simple changes and avoid hazards in a setting without strict production quotas.

(Tr. 1333).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts two assignments of error: (1) that the ALJ committed reversible error in failing to comply with the Appeals Council and this Court's prior remand order, and (2) that although the ALJ accorded "some weight" to the opinions of the consultative examiner, Dr. Weaver, the ALJ failed to further develop the record for clarification and failed to explain how the

4

opinion was incorporated into the RFC. (*See generally* Doc. 10).

## A. Dr. Reddy's Opinion

This Court previously remanded this matter for further consideration because the ALJ had failed to evaluate Dr. Reddy's opinion properly. (Tr. 1422–38). The first time around, the ALJ stated that he could not give controlling weight to Dr. Reddy's opinion but did not expressly state how much weight it deserved. (Tr. 1423). The ALJ had come to this conclusion because the opinion "is dated after [Plaintiff's] date last insured," the severity of the opined limitations "is not supported by the evidence of record that shows [Plaintiff] has not had recurrence of angina or difficulty with his rights hand," "a limitation of no lifting is not reasonable considering the objective evidence in the record," and Plaintiff's "activities of daily living are inconsistent with these restrictions [and] also not consistent with [Plaintiff's] testimony that he would be able to stand/walk three to four hours per day." (Tr. 27)

The Court found this analysis lacking for two interconnected reasons. First, the Court noted that failure to assign particular weight to a treating physician's opinion is error. And, second, the Court concluded that the error was harmful because the ALJ failed to mention the relevant statutory factors, and there were various aspects of Dr. Reddy's opinion that the ALJ did not address at all. The Court expressly stated that the failure to mention the regulatory factors did "not, in itself, necessarily require remand," but, given the overall ambiguity, the Court could not "determine if the reasons provided have substantial support in the record." (Tr. 1422–23 (citing Tr. 1435)).

On remand, the ALJ expressly stated that Dr. Reddy's July 2012 and subsequent statement was entitled to "little" weight. (Tr. 1345–46). Thus, it is undisputed that the ALJ complied with

5

the first part of the Court's remand order by directly noting the weight given. (*See* Tr. 1422). The parties disagree, however, about whether the ALJ was justified in assigning little weight to the opinion.

This is how the ALJ evaluated Dr. Reddy's opinion:

The undersigned has read and considered the statement provided by Dr. Reddy, evidenced at Exhibit 21F. It should be noted the statement was prepared in July 2012, approximately seven months after the expiration of the claimant's date last insured. Dr. Reddy was one of the claimant's treating physicians at the VA. He opined that the claimant could stand a total of two hours, walk a total of 1/2 hour, sit a total of two hours, and perform no lifting, squatting, crawling, or climbing steps and ladders. Additionally Dr. Reddy stated that the claimant's condition was likely to deteriorate if under stress, and the claimant would have absences occurring five or more days per month due to his impairments (Exhibit 21F). The undersigned affords no more than little weight to Dr. Reddy's statements and opinions. First, as noted, the opinion is dated several months after the expiration of his date last insured. Second, the severity of the proposed limitations is not supported by the evidence of record that shows the claimant has not had recurrence of angina or difficulty with his right hand. The claimant was not admitted for routine or consistent treatment for his cardiac conditions prior to the expiration of his date last insured. Additionally, the claimant received no treatment, other than his initial sutures for his right hand fracture and lacerations. The record was devoid of any follow up therapy interventions and the claimant admitted he was not using any assistive devices, such as a hand brace. Third, a limitation of no lifting is not reasonable considering the objective evidence in the record and also the claimant's daily activities that includes grocery shopping. The claimant himself also testified at his most recent hearing that he himself was able to lift 30 pounds of garbage when it was his turn to take out the trash. Fourth, as previously described, the claimant's activities of daily living are inconsistent with these restrictions and are not consistent with the claimant's initial hearing testimony that he would be able to stand and walk three to four hours per day. Therefore, overall Dr. Reddy's assessment is afforded no more than little weight.

The undersigned has read and considered the subsequent statement by Dr. Reddy submitted after the claimant's appeal, evidenced at Exhibit 26F. First, it should be noted the statement was submitted in response to the July 2012 statement made by Dr. Reddy at Exhibit 21F. It should be noted the request for the subsequent statement was not made by counsel until December 17, 2012, a day prior to the claimant's disability hearing. This suggests the attorney knowingly would not have the information for the date of the hearing and would have new opinion evidence from a treating source upon an appeal. On January 2, 2013, Dr. Reddy noted the

6

> patient claimed that he had mentioned symptoms on December 31, 2011 (Exhibit 26F/3). The undersigned finds such a statement is not suitable objective evidence to base the relation back of limitations or conditions. First, Dr. Reddy was not himself making a subsequent opinion, rather he was merely restating something the claimant subjectively claimed to him. Second, for the reasons discussed above, the claimant's subjective reports have been notably inconsistent with the evidence of record and cannot be afforded significant weight. Third, the mere mentioning of symptoms on the claimant's date last insured as Dr. Reddy notes, does not objectively satisfy the claimant sustaining such limitations or conditions that compile a requisite residual functional capacity prior to the expiration of the claimant's date last insured. Therefore, the undersigned affords the subsequent statement made by Dr. Reddy at Exhibit 26F little weight.

(Tr. 1345–46).

Two related rules govern whether this analysis was sufficient. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

As shown above, the ALJ assigned little weight to Dr. Reddy's opinion for several reasons. First, the ALJ explained that Dr. Reddy's opinion, dated July 2012, was prepared roughly seven months after the expiration of Plaintiff's date last insured. (Tr. 1345). Second, the ALJ concluded that the severity of the proposed limitations was not supported by the record, which showed that Plaintiff had no recurrence of angina or difficulty with his right hand. (*Id.*). Third, the ALJ found that Plaintiff's treatment regimen did not align with his complaints. (*Id.*). On this point, the ALJ noted that Plaintiff had not received consistent treatment for his cardiac conditions prior to his date last insured. (*Id.*). The ALJ also noted that Plaintiff did not receive any follow-up treatment for his hand and that Plaintiff admitted that he was not using an assistive device, like a brace, for his hand. (*Id.*). Next, the ALJ noted that Dr. Reddy's limitation that Plaintiff could not lift anything was not reasonable considering the objective evidence in the record, Plaintiff's daily activities, and testimony at the hearing. (*Id.*). Likewise, the ALJ noted that Plaintiff's activities of daily living were inconsistent with Dr. Reddy's restrictions and Plaintiff's testimony that he could stand and walk three to four hours per day. (*Id.*).

The ALJ also explained why the statement that was provided in January 2013, approximately two weeks after the December 2012 administrative hearing, deserved little weight. (Tr. 1346 (citing Tr. 1297)). Specifically, the ALJ explained that the statement was "not suitable objective evidence" to relate the limitations back to the date last insured. (Tr. 1346). The ALJ noted that Plaintiff's attorney asked Dr. Reddy whether the limitations described in the July 2012 evaluation existed on December 31, 2011, and Dr. Reddy explained that "Pt claims that he had mentioned symptoms on Dec 31, 2011." (Tr. 1297). The ALJ thus concluded that Dr. Reddy did not offer an opinion but merely restated Plaintiff's statement. (Tr. 1346). The ALJ also concluded that Plaintiff's subjective reports were inconsistent with the record and could not be given significant weight. (*Id.*). Lastly, the ALJ noted that merely mentioning symptoms on Plaintiff's date last insured does not objectively satisfy Plaintiff's burden to show that the limitations existed prior to date last insured. (*Id.*).

Based on all of this, the Undersigned concludes that the ALJ provided good reasons for assigning little weight to Dr. Reddy's opinion.

**B. Dr. Weaver's Opinion**

Plaintiff also challenges the ALJ's assessment of the consultative examiner, Dr. Mark Weaver. Plaintiff's argument is two-fold. He contends that the ALJ failed to explain how Dr. Weaver's opinion was incorporated into the RFC and further argues that the ALJ should have sought greater clarification of Dr. Weaver's medical source statement.

    *1. Residual Functional Capacity*

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x

9

149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony) and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). As noted, Plaintiff argues that the ALJ failed to incorporate Dr. Weaver's opinion into the RFC.

In March 2011, Dr. Weaver examined Plaintiff at the request of the state agency. (Tr. 854–64). Dr. Weaver reviewed Plaintiff's medical history and also performed manual muscle testing, which revealed abnormal grasp, manipulation, pinch, and fine coordination in Plaintiff's right hand; constant, moderate, involuntary spasm of trapezius and lumbar paravertebral; and reduced range of motion in both shoulders, right hand and fingers, and dorsolumbar spine. (*Id.*). Dr. Weaver ultimately opined:

> In view of his breathing problems, coronary artery disease problems with easy fatigue and exhaustion, right hand problems, sleep apnea and back problems all compounded by his problem of being overweight and the need to carry portable oxygen through the day, he would probably be limited in the performance of physical activities involving sustained sitting, standing, walking, reaching, climbing, lifting, carrying, travel and handling objects with this right hand.

(Tr. 859).

The ALJ assigned "some weight" to "the notion that the claimant would have some physical limitations in lifting, carrying, sitting, standing, and walking, as wells as some postural and environmental limitations (which the examiner did not consider) as a result of his combination of physical conditions and symptoms." (Tr. 1344). The ALJ went on to state that the "record does not support the claimant received ongoing care for his right hand and remains able to engage in normal activities with his right hand….Therefore, overall, the one-time consultative examiner is afforded no more than some weight." (*Id.*). The Undersigned finds no error in the ALJ's analysis of Dr. Weaver's opinion.

Further, the Undersigned disagrees with Plaintiff's contention that Dr. Weaver essentially limited Plaintiff to sedentary work. (*See* Doc. 10 at 16). Sedentary work involves lifting no more than 10 pounds at a time, 20 C.F.R. § 404.1567(a), and no more than two hours of standing and walking in an eight-hour workday, SSR 83-10. As explained above, Dr. Weaver did not assess work-related limitations like this. Instead, he noted that Plaintiff "would probably" be limited in the performance of performing certain physical activities. (Tr. 859). Thus, Plaintiff's argument that Dr. Weaver's opinion was equivalent to limiting Plaintiff to sedentary work is an overreach.

Moreover, the ALJ incorporated some of Dr. Weaver's findings into the RFC and explained why he rejected others. For example, by limiting Plaintiff to a reduced range of light work, the ALJ limited Plaintiff's requirements to sit, stand, walk, lift, and carry. (*See* Tr. 1333, 1344). The ALJ also assessed postural limitations, which were in addition to Dr. Weaver's opined limitations. (Tr. 1344). And although the ALJ did not limit Plaintiff's ability to handle objects, the ALJ explained why he came to this conclusion: Plaintiff did not receive ongoing care for his hand and

remained able to engage in normal activities with his right hand, despite the remote history of finger fracture and laceration. (Tr. 1344).

In sum, the ALJ's crafted RFC accounted for all the limitations that he found supported by the record. Accordingly, the Undersigned finds that substantial evidence supports the RFC as determined by the ALJ.

### 2. *Additional Evidence*

Plaintiff argues that the ALJ should have sought clarification from Dr. Weaver regarding his opinion. (Doc. 10 at 16–17). In support, Plaintiff notes that the Appeals Council, upon remand, authorized the ALJ to "take any further action needed to complete the administrative record and issue a new decision." (*Id.* at 16 (citing Tr. 1444)).

The Sixth Circuit has explained that "an ALJ is required to re-contact" a medical source "only when the information received is inadequate to reach a determination on claimant's disability status . . . ." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n.3 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1520b; SSR 96-5p. And an ALJ is not required to re-contact a source simply because he or she "rejects the limitations recommended by that physician." *Poe*, 342 F. App'x at 156 n.3. Here, the ALJ noted that Dr. Weaver did not assess specific limitations but went on to explain why Dr. Weaver's overall assessed limitations were deficient. Consequently, the duty to re-contact Dr. Weaver was not triggered here. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010) (Where the treating physician's "opinion was deemed unpersuasive not because its bases were unclear, but because they were not corroborated by objective medical evidence," the ALJ did was not required by SSR 96-5p to recontact the treating physician.).

12

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### **Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date: March 1, 2019                     /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE